1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT

8        DISTRICT OF NEVADA

9

10  FIFTY-SIX HOPE ROAD MUSIC, LTD., et al.,    )
                                                )
11          Plaintiffs,                         )        Case No.  2:05-cv-01059-KJD-GWF
                                                )
12  vs.                                         )        **ORDER**
                                                )
13  MAYAH COLLECTIONS, INC., et al.,            )        **(Defendant's Motion to Compel - #77)**
                                                )
14          Defendants.                         )
                                                )
    _____)
15

16          This matter is before the Court on Defendant The Tunes Company's Motion to Compel (#77),

17  filed on February 27, 2007; Plaintiffs' Opposition to Defendant's Motion to Compel (#83), filed March

18  23, 2007; and Defendant's Reply Memorandum in Support of Its Motion to Compel and Opposition to

19  Plaintiffs' Motion for Sanctions (#89), filed April 4, 2007.  The Court originally scheduled Defendant's

20  motion for hearing on April 6, 2007.  The Court rescheduled the hearing on the motion for April 30,

21  2007 and then at the request of the parties continued the hearing to May 16, 2007, at which time it was

22  heard.

23                                      **BACKGROUND**

24          Plaintiffs Fifty-Six Hope Road Music, Ltd. and Zion Rootswear, L.C. allege that they are the

25  exclusive owners and licensees of all trademark and publicity rights in and to the name, image and

26  likeness and other indicia of the late music performer Bob Marley. *See Opposition (#83)*, page 1.

27  According to Plaintiffs, Defendants Robert Ross[1] and The Tunes Company contend that in February

28

    _____

            [1]Defendant Ross has been dismissed from this case.

1    2004 they acquired a license to use the Bob Marley name and image from an artist named Randy Tuten.

2    Plaintiffs allege that when they learned that Defendants were continuing to sell "Bob Marley" t-shirts at

3    the 2005 MAGIC trade show in Las Vegas Nevada, they filed this action for trademark infringement

4    and unfair competition.  Although Defendant The Tunes Company apparently agrees that it obtained a

5    license from Mr. Tuten in 2004, it contends that its right to use the Marley image is derivative of the

6    rights of Mr. Tuten which date back well before 2004 and pre-date Plaintiffs' use of the mark.  *See*

7    *Reply (#89)*, page 7.

8         Defendant, The Tunes Company, served its First Request for Production of Documents and First

9    Set of Interrogatories on Plaintiffs Fifty-Six Hope Road Music, Ltd. and Zion Rootswear, L.C. and

10   Plaintiff/Counterdefendant Miles Davis Properties, LLC ("MDP") on September 19, 2006.[2]  Defendant

11   served 15 interrogatories, not including sub-parts, on each Plaintiff and MDP and 130 or more requests

12   for production on each Plaintiff and MDP.  Plaintiffs' and MDP's discovery responses were due on

13   October 23, 2006.  Prior to that date Plaintiffs and MDP did not request or obtain an extension of time

14   to serve their discovery responses.  On or about November 3, 2006, Defendant's counsel contacted

15   Plaintiffs' counsel regarding their overdue discovery responses.  Plaintiffs' counsel apparently informed

16   Defendant's counsel at that time that Michael Conley, the principal officer of Plaintiffs' licensee who

17   was responsible for prosecuting the action and preparing Plaintiffs' discovery responses, was injured in

18   a jet skiing accident on September 17, 2006 and was subsequently hospitalized and therefore

19   unavailable to assist in preparing Plaintiffs' discovery responses.  Plaintiffs' counsel, therefore,

20   requested an extension of time until December 8, 2006 in which to serve their discovery responses.

21   These matters were memorialized in a November 10, 2006 letter by Plaintiffs' counsel to Defendant's

22   counsel.  Defendant's counsel responded on November 13, 2006 that the circumstances did not justify

23   Plaintiffs' failure to timely serve their discovery responses and refused to grant an extension of time for

24   the responses.  Defendant further stated that it would oppose a request for extension and would file a

25

26         [2]For purposes of this order, the Court's reference to "Plaintiffs" includes Fifty-Six Hope Road

27   Music, Ltd. and Zion Rootswear, L.C.  Miles Davis Properties ("MDP") subsequently dropped its claim
     in this case, but it is still a counterdefendant.  MDP has never served responses to Defendant's

28   discovery requests.

1  motion to compel responses without objection.

2      Following this exchange of correspondence, Plaintiffs' counsel discussed settlement with

3  Defendant's counsel and requested that Defendant agree to stay discovery and Plaintiffs' responses to

4  the discovery requests while settlement negotiations were pending.  Defendant's counsel agreed to

5  discuss settlement and to provide certain information to Plaintiffs' counsel relative thereto, but declined

6  to extend or stay discovery.  While still refusing an extension of discovery, Defendant's counsel stated

7  on December 5, 2006 that he would hold off on any further action until Defendant received and

8  responded to Plaintiffs' settlement proposal.   The parties exchanged settlement proposals in December

9  2006, but did not resolve the case.  Accordingly, on December 21, 2006, Defendant's counsel

10 demanded that Plaintiffs immediately provide discovery responses without objections.

11     Plaintiffs served their responses to Defendant's First Request for Production of Documents and

12 First Set of Interrogatories on December 22, 2006.  In their responses to Defendant's First Request for

13 Production of Documents, Plaintiffs stated, as general objections, that they objected to the requests to

14 the extent they sought information protected from disclosure by the attorney-client privilege and/or

15 attorney-work product doctrine.  Plaintiffs also objected to individual requests on grounds of relevancy,

16 over breath, burdensomeness and privilege.  Subject to their objections, Plaintiffs provided answers to

17 the interrogatories.  In their responses to the requests for production, Plaintiffs also either produced

18 documents subject to the objections or stated that they did not have documents responsive to the

19 requests.  Plaintiffs also served supplemental answers to interrogatories and supplemental responses to

20 request for production on February 13, 2007.

21     Defendant alleges that Plaintiffs waived their right to object to Defendant's discovery requests

22 by failing to assert them in a timely manner.  Defendant therefore requests that Plaintiffs be ordered to

23 provide full and responsive responses to all of the discovery requests addressed in its Motion to

24 Compel.  Notwithstanding their objections to Defendant's discovery requests, Plaintiffs state that they

25 have produced 4,275 pages of responsive documents and have adequately responded to Defendant's

26 requests for production and interrogatories.  To the extent that Plaintiffs have not produced documents

27 or information, they argue that Defendant's discovery requests are over broad, seek irrelevant

28 information and impose an undue burden on the Plaintiffs.  Plaintiffs also allege that Defendant's

1  motion does not contain the requisite certification that Defendant made a good faith effort to meet and

2  confer with Plaintiffs to resolve the discovery dispute prior to filing its motion to compel and that no

3  such meet and confer conference took place.

### DISCUSSION

5  **1.      Whether Plaintiffs Have Waived Their Right to Object to Defendant's Discovery Requests.**

6

7       Fed.R.Civ.Pro. 33(b) provides that a party shall serve its answers and objections to

8  interrogatories within 30 days after the interrogatories are served and that all grounds for an objection to

9  an interrogatory shall be stated with specificity.  Any ground not stated in a timely objection is waived

10  unless the party's failure to object is excused by the court for good cause shown.  As a general rule, the

11  failure to make a timely objection to a discovery request waives the objection.  *Richmark Corp. v.*

12  *Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *Safeco Ins. Co. v. Rawstrom*, 183

13  F.R.D. 668 (C.D. Cal. 1998).  *See also Fonville v. District of Columbia*, 230 F.R.D. 38, 42 (D.D.C.

14  2005).  *Safeco Ins. Co. v. Rawstrom* notes that the requirement that timely objections be made is

15  consistent with the general philosophy of the discovery rules to facilitate the swift and efficient

16  disclosure of all information relevant to the subject matter of the case.  Although Rule 34 does not

17  contain an express provision that untimely objections are waived, the courts have interpreted the rule

18  regarding waiver consistent with Rule 33.  *See Fonville v. District of Columbia, supra,* 230 F.R.D. at

19  42, citing *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 530-31 (E.D. Pa. 1999);

20  *Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.,* 109 F.R.D. 12, 24-25 (D. Neb. 1983),

21  and *Shenker v. Sportelli,* 83 F.R.D. 365, 366-67 (E.D. Pa. 1979).

22       If a party is unable to serve his discovery responses within the time provided by the rules, he

23  should timely request an extension from the opposing party or, if necessary, move the court for an

24  extension.  *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999).  In this case, Plaintiffs did not

25  timely serve their objections and responses and did not seek or receive an extension prior to the due

26  date for their responses.  It appears that Plaintiffs first informed Defendant of their inability to provide

27  timely responses on November 3, 2006, eleven days after the due date when Defendant's counsel

28  contacted Plaintiffs' counsel regarding their overdue discovery responses.  Plaintiffs also have not

1  demonstrated that the inability of the individual responsible for assembling Plaintiffs' substantive

2  responses prevented Plaintiffs from serving timely objections to the discovery requests.

3       Plaintiffs argue that their objections were not waived because the parties agreed to stay

4  discovery while the parties engaged in settlement negotiations.  In support of their position, Plaintiffs

5  cite *Greene v. Union Mutual Life Ins. Co.*, 110 F.R.D. 290 (D.Me. 1986) and *Midstate Aftermarket*

6  *Body Parts, Inc. v. Truck Ins. Exchange,* 2006 WL 2079940 (E.D.Ark. 2006).  In *Greene*, the court

7  found that there was an agreement between the parties to stay discovery while they engaged in

8  settlement negotiations.  The issue was when the informal stay expired and defendant's discovery

9  responses were due.  In *Midstate Aftermarket Body Parts,* the court likewise found that the parties

10  agreed to extend plaintiff's discovery responses, but they disagreed whether the responses were due on

11  April 10th or 12th.  Because no written agreement was provided to the court, it could not determine

12  whether the responses were tardy, but found that any tardiness was *de minimis* and the objections were

13  not waived.

14       In this case, it is clear that there was no agreement for an extension or a stay of discovery prior

15  to the due date for Plaintiffs' responses on October 23, 2006 or later on November 3, 2006 when

16  Defendant's counsel demanded that responses be served.  In his November 13, 2006 letter, Defendant's

17  counsel reiterated that he would not grant an extension, would oppose a motion for extension and

18  would move to compel full and complete responses without objection.  Counsels' email

19  communications during the subsequent settlement negotiations in December 2006 make clear that

20  Defendant's counsel continued to refuse to grant any extension or stay of discovery.  Rather, Defendant

21  only agreed not to take any action to compel responses until after it received and responded to

22  Plaintiffs' settlement proposal.  Once those negotiations ended, Defendant's counsel again demanded

23  that Plaintiffs immediately serve their discovery responses without objection.  Under these

24  circumstances, the Court concludes that there was no express or implied agreement to stay discovery or

25  allow Plaintiffs' to serve objections to the discovery.

26       The Court may hold that untimely objections are not waived where the delay is not substantial

27  or good cause is shown for not making timely objections.  *See Blumenthal v. Drudge,* 186 F.R.D. at 240

28  (plaintiffs did not demonstrate good cause for failing to timely object, but court allowed objections

1   where the responses were only five or nine days late and the merits of the objections were not

2   challenged); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F.Supp.2d 83 (D.D.C. 2005)(court held that

3   objections were not waived where responses were served nine days late).  Here, Plaintiffs did not serve

4   their discovery responses with objections until nearly two months after they were due and more than a

5   month and a half after Defendant's counsel demanded that responses be provided without objection.

6   The Court therefore deems Plaintiffs' objections to have generally been waived.

7          Under Fed.R.Civ.Pro. 26(b)(2)(C) the court, on its own initiative after reasonable notice or

8   pursuant to a motion under Rule 26(c), may limit the discovery sought if it determines that it is

9   unreasonably cumulative or duplicative or the burden and expenses of the discovery outweighs its likely

10  benefit taking into account the needs of the case, the amount in controversy, the parties resources, the

11  importance of the issues at stake in the litigation and the importance of the proposed discovery in

12  resolving the issues.  Even where the court deems the party's discovery objections to have been waived,

13  it has the discretion to decline to compel production where the request far exceeds the bounds of fair

14  discovery.  *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 D. Mass. 1988).  *See also Shenker v. Sportelli*,

15  83 F.R.D. 365 (E.D.Pa. 1979) (declining to order production of completely irrelevant information,

16  notwithstanding defendant's failure to timely object).  *See also Nugget Hydroelectric L.P. v. Pacific*

17  *Gas and Elec. Co.*, 981 F.3d 429, 438-39 (9th Cir. 1992), affirming the court's denial of a motion to

18  compel production of clearly excessive discovery requests involving potentially millions of documents

19  where the moving party failed to demonstrate that burden would be minimal and that the requested

20  documents would lead to relevant evidence.  The responding party in that case, however, may have

21  asserted proper objections.

22         The court's authority to refuse to compel responses, however, is not a safe harbor for a party to

23  assert objections in opposition to a motion to compel that it failed to raise in a timely manner.  The

24  Court will, therefore, evaluate whether Defendant's motion to compel should be granted or denied

25  under a more restrictive standard of whether the discovery requests clearly exceed the bounds of

26  reasonable discovery and impose an undue burden on Plaintiffs, rather than whether the Court would

27  have sustained Plaintiffs' objections had they been timely and properly made.

28  . . .

1

**2.      Whether Defendant Complied With Requirements of Rule 37(a)(2)(B) and LR 26-7 Prior to Filing Its Motion to Compel.**

2

3        Plaintiffs argue that Defendant's motion should be stricken because it does not contain the

4    certification required by Fed.R.Civ.Pro. 37(a)(1)(B) and Local Rule (LR) 26-7(b) that the moving party

5    has in good faith conferred or attempted to confer with the opposing party in an effort to secure the

6    information or material requested without court action.  Plaintiffs also contend that Defendant's counsel

7    did not make a good faith effort to confer and resolve the dispute prior to filing the motion.  Plaintiffs

8    argue that "all that Defendants have done is make unilateral demands that Plaintiffs strictly comply with

9    Defendants' overly broad and unduly burdensome discovery requests." *Opposition (#83)*, page 6.[3]

10       Defendant's Motion (#77) states at page 13:

11             Pursuant to D. Nev. L.R. 27-7(B), the undersigned counsel hereby
             certifies that despite a good faith effort to resolve the discovery dispute
12             with counsel for the Plaintiffs, through phone conferences, as well as an
             exchange of emails and numerous letters, counsel were unable to resolve
13             this dispute.

14       Plaintiffs are correct that this type of generalized, boilerplate certification does not comply with

15    the requirements set forth in *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171-72

16    (D.Nev. 1996), which requires that the certificate include the names of the parties who conferred or

17    attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates,

18    times, and results of their discussions so that the court can pass a preliminary judgment on the adequacy

19    and sincerity of the good faith conferment between the parties.  *Shuffle Master* also requires that the

20    movant have actually performed in compliance with its certification.  This performance requires that the

21    moving party's counsel "personally engage in two-way communication with the nonresponding party to

22    meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention.

23

24       [3]In addition, Plaintiffs argue that the motion should be stricken under LR 26-7(a) because it does

25    not set forth in the motion the full text of the discovery requests and responses.  Given the number of
     requests at issue and the page limitation on motions, however, it was more practical in this case to
26    summarize the disputed discovery requests in the motion so long as copies of the discovery requests and
     responses were attached to the motion, as was done.  The Court, therefore, will not strike the motion on
27    this basis.

28

1   *See Nevada Power Co. v. Monsanto Co.,* 151 F.R.D. 118 (D.Nev.1993)." A sincere effort to resolve

2   the dispute occurs where both parties have presented the merits of their respective positions and

3   meaningfully assessed the relative strengths of each.

4         Defendant's Reply also does not cure the deficiencies of  its certification.  Defendant's counsel

5   states that he "spent well over 40 hours identifying and outlining the deficiencies contained in

6   Plaintiff's discovery responses, and has specifically outlined each of these deficiencies in detailed

7   letters sent to Plaintiff's counsel on January 17 and February 19, 2007.  ...  Through these

8   communications, the parties have been successful in narrowing some of the disputed issues, however,

9   the issues identified in Defendant's motion to compel remain, and require court intervention." *Reply*

10   *(#89)*, page 9.  Such letters, alone, do not satisfy the conferment requirement.  Defendant's counsel does

11   not state whether following his February 19, 2007 letter, he made any attempt to contact Plaintiffs'

12   counsel by telephone to further attempt to discuss and resolve the dispute.

13         Although the Court would be justified in striking Defendant's Motion, it will exercise its

14   discretion to address the merits of the motion for the following reasons:  First, Plaintiffs asserted

15   untimely objections to the discovery requests which need to be addressed, as the Court has now done by

16   deeming the objections generally waived.  Second, the parties conferred after the May 16, 2007 hearing

17   regarding the production of correspondence; and although the parties were able to resolve most of their

18   dispute regarding production of correspondence, an issue remains whether Plaintiffs should be required

19   to produce a detailed privilege log of alleged privileged attorney-client or attorney-work product

20   communications.  Third, the parties appear to be at an impasse whether other documents or information

21   should be produced.  In deciding this motion, however, the Court takes into consideration the lack of a

22   meaningful meet and confer following Defendant's February 19, 2007 letter which arguably could have

23   resolved many of the disputes in issue.  Finally, discovery in this case has now closed and expeditious

24   resolution of the remaining discovery dispute serves judicial efficiency.

25         **3.**      **Plaintiffs' Production of Correspondence.**

26         The parties filed a Joint Status Report (#109) on May 25, 2007 in which they informed the

27   Court that they have reached agreement regarding the production of relevant non-privileged

28   correspondence.  Based on the Joint Status Report, the Court infers that the parties have agreed that

1   Plaintiffs are not required to produce privileged attorney-client communications or attorney-work

2   product, subject to an adequate basis being shown for the assertion of the privileges.  As set forth in the

3   Joint Status Report, Defendant's counsel has provided Plaintiffs with a list of categories of documents

4   it requests be produced, and Plaintiffs have agreed to search for and produce all non-privileged

5   documents within those categories.  The parties disagree as to whether Plaintiffs should be required to

6   provide a privilege log in accordance with Rule 26(b)(5)(A) regarding email communications between

7   Plaintiffs and their counsel or between Plaintiffs' attorneys which Plaintiffs claim are protected from

8   disclosure by the attorney-client privilege or attorney work-product doctrine.  Plaintiffs state that there

9   are hundreds and perhaps thousands of such email communications between Plaintiffs and their counsel

10  which are clearly protected by the attorney-client privilege and between Plaintiffs' attorneys that are

11  protected by the attorney work-product doctrine.  Plaintiff states that it would be unduly burdensome

12  and expensive to require Plaintiff to prepare a privilege log for each individual email communication.

13  Alternatively, Plaintiff argues that if it is required to prepare a privilege log for each email

14  communication, that Defendant be required to reimburse Plaintiff for the expense incurred in preparing

15  the privilege log.[4]  Defendant argues, however, that it entitled to receive an adequate privilege log for

16  each relevant email or document as to which privilege is claimed so that it can determine whether

17  attorney-client privilege or attorney work-product doctrine applies.  Defendant also argues that there is

18  no authority for shifting the expense of preparing the log to it.

19       Fed.R.Civ.Pro. 26(b)(5)(A) states that when a party withholds information otherwise

20  discoverable under the rules by claiming that it is privileged or protected by the work-product doctrine,

21  the party shall make the claim expressly and shall describe the nature of the documents,

22  communications, or things not produced or disclosed in a manner that, without revealing the

23  information itself privileged or protected, will enable the other parties to assess the applicability of the

24

25

26       [4]Plaintiff also requests that if it is required to prepare a privilege log of its attorney-client or
    attorney-attorney communications that Defendant also be required to prepare a log of its privileged
27  correspondence and emails.  There is, however, no motion to compel pending against the Defendant.
    The Court will not order Defendant to produce a privilege log or other proof of privileged
28  communications in the absence of a proper motion to compel production.

1    privilege.  In regard to the attorney-client privilege, *Diamond State Ins. Co. v. Rebel Oil*, 157 F.R.D.

2    691, 698 (D.Nev. 1994), states:

3    "[T]he party asserting the privilege has the burden of making a *prima
     facie* showing that the privilege protects the information that the party
4    intends to withhold."  *In re Grand Jury Investigation,* 974 F.2d at 1070.
     This burden is met by demonstrating that the documents adhere to the
5    essential elements of the attorney-client privilege.  *Id.,* citing *Fischel,* 557
     F.2d at 211.  This demonstration is generally accomplished by the
6    submission of a privilege log which identifies (a) the attorney and client
     involved, (b) the nature of the document, (c) all persons or entities shown
7    on the document to have received or sent the document, (d) all persons or
     entities known to have been furnished the documents or informed of its
8    substance, and (e) the date the document was generated, prepared, or
     dated.  *In re Grand Jury Investigation,* 974 F.2d at 1071, citing *Dole v.
9    Milonas,* 889 F.2d 885, 888 n. 3, 890 (9th Cir.1989).  Affidavits may also
     be required to answer any necessary questions left open by the log.  See
10   *In re Grand Jury Investigation,* 974 F.2d at 1071.

11   *Diamond State,* 157 F.R.D. at 699, further states in regard to the attorney work-product doctrine:

12   The party asserting the work-product rule has the burden of establishing,
     for each document, the rule's application.  Fed.R.Civ.P. 45(d)(2);  *Conoco
13   Inc. v. United States Dept. of Justice,* 687 F.2d 724, 728 (3rd Cir.1982)
     (FOIA case).   This burden is met by submitting detailed affidavits
14   sufficient to show that precise facts exist to support the immunity claim.
     *Harvey's Wagon Wheel, Inc. v. N.L.R.B.,* 550 F.2d 1139, 1141 (9th
15   Cir.1976) (FOIA case);  *Nutmeg Insurance Co. v. Atwell, Vogel &
     Sterling, a Division of Equifax Services, Inc.,* 120 F.R.D. 504
16   (W.D.La.1988).   The asserting party will usually also provide a privilege
     log describing the documents it claims to be protected.   This log alone,
17   however, is often inadequate to conduct the necessary analysis.   See
     *Murray Sheet Metal Company, Inc.,* 967 F.2d at 985 (record consisting
18   mainly of privilege log inadequate).

19   The 1993 Advisory Committee Notes regarding Rule 26(b)(5) also state, however:

20   The rule does not attempt to define for each case what information must
     be provided when a party asserts a claim of privilege or work product
21   protection.  Details concerning time, person, general subject matter, etc.,
     may be appropriate if only a few items are withheld, but may be unduly
22   burdensome when voluminous documents are claimed to be privileged or
     protected, particularly if the items can be described by categories.

23

24       This statement is also consistent with Rule 1 of the Federal Rules of Civil Procedure which

25   generally provides that the rules are to be construed and administered to secure the just, speedy and

26   inexpensive determination of every action.   In regard to the foregoing Advisory Committee Note, 8

27   *Wright, Miller & Marcus,* Federal Practice and Procedure Civil 2d § 2016.1 states: "This realistic

28   provision should make clear the need to provide reasonable specifics while also showing that care is

1    desirable to avoid undue effort in preparing logs or similar listings of withheld materials." *Diamond*

2    *State* also notes that "[a]lthough the 'privilege log' approach is generally used to establish the

3    attorney-client privilege, the Ninth Circuit has indicated that other methods may be used to establish the

4    privilege. *In re Grand Jury Investigation,* 974 F.2d at 1071.   Regardless of the method used, a *prima*

5    *facie* showing must be made of the existence of the attorney-client privilege."

6           Email communications, or information regarding telephone calls, are not excepted from the

7    requirements of Rule 26(b)(5)(A).  Although, as Plaintiffs state, email communication may have taken

8    the place of telephone conversation, it has also replaced paper correspondence.  Allowing a party to

9    avoid its obligations under Rule 26(b)(5)(A), by simply stating that privileged email communications

10   are too numerous to describe, would create the potential for avoiding the production of relevant

11   information that is not entitled to protection under the attorney-client privilege or work-product

12   doctrine.  That said, confidential email communications between Plaintiffs and their attorneys are

13   generally protected by the attorney-client privilege.  Additionally, email communications exchanged

14   between Plaintiffs' counsel during this lawsuit or in anticipation of this lawsuit are generally entitled to

15   protection from disclosure under the attorney work-product doctrine.  If, as Plaintiffs claim, emails

16   regarding such communications are in the hundreds or thousands, requiring Plaintiffs to provide a

17   privilege log for each privileged email communication would be unduly burdensome and not serve the

18   legitimate purposes of discovery under the Fed.R.Civ.Pro. 26.

19           Accordingly, the Court will not require Plaintiffs to produce a privilege log for each allegedly

20   privileged email communication, subject to Plaintiffs' counsel submitting an affidavit or declaration

21   under oath which states and describes the following: (1)  That Plaintiffs have made a diligent and good

22   faith effort to locate and produce all relevant and non-privileged documents, including emails,

23   responsive to Defendant's requests.  (2)  The number, or a reasonable estimate of the number, of the

24   privileged email communications that exist.  (3)  That Plaintiffs have reviewed the alleged attorney-

25   client or work-product privileged emails to ensure that relevant, non-privileged email communications

26   are not being withheld from production and that Plaintiffs' counsel verifies that no arguably non-

27   privileged email communications are being withheld.  (4)  In the case of emails as to which the

28   attorney-client privilege is claimed, the affidavit or declaration should include a verification that the

1   emails were not provided to persons other than the client and attorney.  If such  communications were

2   provided to non-clients, and the attorney-client privileged is ==still== claimed, then a privilege log consistent

3   with *Diamond State* for each such communication should be provided.  (5)  In the case of attorney-work

4   product, the privilege may extend to persons other than the attorneys or the client, such as investigators.

5   To the extent any attorney work-product emails have been provided to persons other than the attorneys

6   or the client, an appropriate privilege log consistent with *Diamond State* should be produced for each

7   such communication and an explanation provided as to why the work-product privilege applies.

8   It is Plaintiffs' obligation to review its records and produce relevant, non-privileged documents

9   and information.  Accordingly, the Court will not shift to Defendant the expense incurred by Plaintiffs

10   in reviewing the email communications and preparing an affidavit or declaration in accordance with this

11   order.

12   **4.   Defendant's Other Discovery Requests.**

13   **Interrogatory No. 10:**   This interrogatory asks Plaintiffs to identify the date of first use

14   anywhere and first use in commerce of the mark(s) by Plaintiffs and by any predecessor-in-interest to

15   Plaintiffs.  Plaintiffs initially answered this interrogatory, subject to objection, by referring Defendant to

16   the trademark application and related file materials filed with the United States Patent and Trademark

17   Office.  In their supplemental answer, Plaintiffs stated that the registration on file lists the date of first

18   use for t-shirts, the goods at issue in this lawsuit, at least as early as 1990.  Possibly, Plaintiffs'

19   supplemental answer represents the best information they have.  The Court does not perceive, however,

20   why Plaintiffs cannot more directly respond to this interrogatory by stating when they first actually

21   made use of the mark based on their best knowledge, information and belief formed after reasonable

22   inquiry.  Plaintiffs are therefore ordered to supplement their response to this interrogatory by stating the

23   first date the mark was actually used by Plaintiffs to the best of their knowledge, based on reasonable

24   inquiry.

25   **Interrogatory No. 11:**   This interrogatory asks, with respect to each of Plaintiffs' goods and

26   services bearing the mark(s), that Plaintiffs state the annual sales by Plaintiffs and/or Plaintiffs'

27   licensees in numbers of units and approximate dollar amounts, as well as the geographical area of the

28   sales from the date such goods and services were first sold.  Plaintiffs state in their opposition that they

1  have adequately answered this interrogatory by listing the numbers of t-shirts sold and the total volume

2  of sales for t-shirts for 2004 through 2006.  Plaintiffs further argue that this answer is sufficient.  First,

3  Plaintiffs argue that this action arises from Defendant's sale of infringing t-shirts bearing the likeness of

4  Bob Marley since 2004.  Therefore, Plaintiffs argue that requiring it to produce sales information for a

5  longer period and other than for t-shirts would be irrelevant and unduly burdensome.

6        In addition, in response to this and other discovery requests made by Defendant, Plaintiffs state

7  that they have produced 4,275 pages of responsive documents dating back to the early 1990s, including

8  information about past and current licenses, all documents submitted to the United States Patent and

9  Trademark Office, including their Section 8 & Section 15 affidavits which detail these trademarks and

10 contain samples of how the marks have been used and on what products.  Plaintiffs state that they have

11 also produced information relating to 29 current licenses with a detailed description of the license they

12 have been granted in connection with the mark.  Plaintiffs also state that they have produced catalogs

13 which show the use of the marks on a variety of goods including and in addition to t-shirts, and that

14 they have produced royalty statements containing substantial financial information related to the sale of

15 these goods.  *See Opposition (#83)*, page 3.  Plaintiffs also state that they have produced documents or

16 information showing both the number of units sold and the amount of revenue generated by sales of the

17 t-shirts and other listed products.  *Id.*, page 14.  Plaintiffs also argue that requiring them to provide

18 information regarding sales for prior years is irrelevant because Defendant has not plead an affirmative

19 defense of abandonment, which is therefore waived.  *See Atlas Supply Co. v. Atlas Brake Shops, Inc.*,

20 360 F.2d 16, 18 (6th Cir. 1966).

21        Defendant does not dispute that it has received the documents and information described in

22 Plaintiffs' opposition to the motion to compel.  It, therefore, may be that Defendant has received

23 information from which it can glean the information requested in Interrogatory No. 11.  Defendant

24 argues that it has sufficiently pled an affirmative defense of abandonment in its answer by alleging that

25 Plaintiffs are not the lawful owners of the alleged intellectual property rights and that Plaintiffs have

26 submitted fraudulent statements to the Patent and Trademark office.  The Court finds that these

27 affirmative defenses do not clearly allege an affirmative defense of abandonment.  Because Plaintiffs

28 waived their objections, however, the Court will not deny Defendant's motion to compel regarding this

1   interrogatory on the grounds that Defendant failed to plead an affirmative defense of abandonment and

2   the interrogatory is irrelevant.  If Plaintiffs had timely objected to this interrogatory on this ground,

3   Defendant arguably would have had the opportunity to move for leave to amend its answer to assert the

4   affirmative defense, assuming the Court found that it was not adequately pled.  The Court is also not

5   persuaded that requiring Plaintiffs to further answer this interrogatory regarding sales information

6   regarding its products for prior years is so unduly burdensome that the Court should deny the motion to

7   compel in regard to this interrogatory under Rule 26(b)(2)(C).  Accordingly, Plaintiffs are ordered to

8   provide a full and complete answer to Interrogatory No. 11.

9        **Request for Production Nos. 82, 104, 105 and 128:**  These requests for production all refer to

10   correspondence or communications that are the subject of the parties' agreement that Plaintiffs will

11   produce relevant correspondence as set forth in their Joint Status Report (#109) filed on May 25, 2007.

12   The Court grants Defendant's motion to compel subject to the parties' agreement and resolution of the

13   issue and the Court's ruling in this order regarding the identification of allegedly privileged

14   communications.

15        **Request for Production Nos. 13 and 64:**  At page 9 of its Reply (#89), Defendant has

16   withdrawn its motion to compel as to these requests, and on that basis, the Motion is denied.

17        **Request for Production Nos. 27 and 32:**  Request No. 27 seeks all documents, including

18   advertisements, which relate to how Plaintiffs  marketed and/or advertised in the past and/or now

19   market and advertise the marks.  Request 32 requests all documents which evidence Plaintiffs' use of

20   the marks being continuous since the date of first actual use.  Plaintiffs' Opposition has articulated a

21   reasonable defense to these requests on the grounds that they have already produced responsive

22   documents to these requests and that requiring them to produce additional documents would be wholly

23   outside the bounds of relevancy and unduly burdensome under Rule 26(b)(2)(C).  In this regard,

24   Plaintiffs have described in their opposition the types of documents they have produced which appear

25   responsive to these requests.  In its Reply, Defendant justifies compelling further responses to these

26   requests on the grounds that it is entitled to all documents showing that the marks have been in

27   continuous use since they were first actually used.  The Court's concern with this request is the undue

28   and unnecessary burden it imposes on Plaintiffs to produce all records relating to use in each year

1   dating back to 1990 or earlier.  The Court will, therefore, deny the motion as to these requests for all

2   records relating to continuous use since the products were first placed in use.  As Plaintiffs state in their

3   opposition, even some minor or limited use in a given year is sufficient to defeat a claim of

4   abandonment.  The Court will, therefore, order that, to the extent they have not done so, Plaintiffs

5   produce representative documents showing that they made use of the marks in the years since the mark

6   was first used.

7          **Request for Production Nos. 30 and 40:**  These requests respectively seek all documents

8   which evidence Plaintiffs use of the mark(s) being continuous since the date of first actual use and all

9   past and current licenses and/or assignments related to Plaintiffs' mark(s).  Plaintiffs respond that these

10  requests are duplicative of each other as well as Requests 27 and 32 and seek the same information,

11  which appears to be arguably true.  Additionally, Plaintiffs state that they have already produced

12  relevant license agreements.  The relevancy of these requests go to the issue of whether Plaintiffs have

13  made continuous use of the marks.  As stated above, the Court orders only that Plaintiffs produce

14  documents necessary to show that they made continuous use of the marks during the years since the

15  marks were first used for purposes of addressing a potential abandonment defense.

16          Defendant also argues, at minimum, that Plaintiffs should be precluded from using any other

17  licenses or documents in this case that have not been produced.  The Court obviously agrees with this

18  latter request because Plaintiffs are obligated to disclose such documents or information under Rule

19  26(a).  Rule 37(c)(1) further provides that a party is precluded from using at trial, a hearing or on a

20  motion any witness or document not disclosed.  Accordingly, Defendant's motion will be granted to the

21  extent that Plaintiffs will be precluded from using at trial, hearing or on a motion any documents

22  requested under Request Nos. 39 and 40, or other requests for production that they have not produced in

23  response thereto or which Plaintiffs have not disclosed pursuant to Rule 26(a).

24          **Request for Production No. 48:**  This request seeks production of documents which evidence

25  Plaintiffs' attendance at trade shows where their mark(s) have been displayed, advertised and promoted.

26  In response to this request, Plaintiffs state that they have provided responsive documents and produced

27  trade show receipts for the past three years.  In its Reply, Defendant generally states that it should be

28  able to obtain all documents for trade shows, but does not demonstrate for what purpose this additional

1  information is relevant or needed in light of the other documents and information produced by the

2  Plaintiffs.  The Court will deny Defendant's motion to compel further responses to this request, again

3  with the understanding that Plaintiffs are precluded from offering evidence hereafter regarding other

4  trade shows for which they have not produced relevant documents or information.

5       **Request for Production Nos. 111-119:**  In their opposition, Plaintiffs addressed Defendant's

6  remaining requests for production on which it seeks to compel further production, Nos. 111-117 to

7  Hope Road and Nos. 113-119 to Zion.   Plaintiffs described the documents they have produced in

8  response to these requests and argues that production of additional documents is outside any reasonable

9  scope of relevancy and would simply be unduly burdensome.  In its Reply, Defendant has not addressed

10  the adequacy of Plaintiffs' responses or what additional documents or information it needs in order to

11  prepare its defense in this case, particularly as to whether it needs to obtain all of the additional

12  discovery it seeks in order to establish a possible abandonment defense.  Although the Court has not

13  stricken Defendant's motion for failing to comply with the certification requirements of Rule 37(b) and

14  LR 26-7(b) and *Shuffle Master, supra*, it does not appear that Defendant attempted to engage Plaintiffs

15  in a meaningful meet and confer conference regarding these requests in an effort to obtain additional

16  relevant information responsive to the requests without Court action.  Nor can the Court determine from

17  Defendant's arguments that production of these additional records are, in fact, reasonably necessary to

18  its defense.  Therefore, as to these requests, it appears that Defendant may simply be using Plaintiffs'

19  failure to assert timely objections to impose an undue burden on Plaintiffs to produce documents and

20  things that, while arguably  relevant, are cumulative of the information Defendant has already obtained.

21  Accordingly, Defendant's motion to compel further responses to these requests is denied.

22       **5.    Defendant's Motion to Compel Discovery Responses by MDP.**

23       Defendant's Motion to Compel also seeks an order compelling Miles Davis Properties, LLC

24  ("MDP") to provide answers to interrogatories and requests for production of documents.  After

25  Defendant served their discovery requests in this case, MDP dropped its affirmative claims in the

26  Complaint and is no longer a party-Plaintiff.  MDP, however, remains a counterdefendant in this case.

27  It appears that, at least some of the discovery sought by Defendant from MDP is relevant to its

28  counterclaim against MDP, and MDP is hereby ordered to serve answers to interrogatories and

1 responses to the requests for production of documents within 30 days of the date of this Order. Failure

2 of MDP to respond to Defendant's discovery requests in compliance with this Order may result in the

3 imposition of more severe sanctions, including a recommendation to the District Judge that MDP's

4 answer to the counterclaim be stricken and its default entered.

5       **6.**      **Plaintiffs' Request for Sanctions Against Defendant.**

6       For the reasons set forth above, and in view of the Court's order partially granting Defendant's

7 Motion to Compel, Plaintiff's request for sanctions against Defendant will be denied.  Accordingly,

8       **IT IS HEREBY ORDERED** that Defendant's Motion to Compel (#77) is **granted,** in part, and

9 **denied**, in part in accordance with the provisions of this Order.

10       DATED this 11th day of June, 2007.

11

12                                     *George Foley Jr.*

13                     GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28